UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 9, 2014

LETTER TO COUNSEL

    RE:    *Colin Cresser v. Commissioner, Social Security Administration*;
                Civil No. SAG-14-20

Dear Counsel:

       On January 2, 2014, Plaintiff Colin Cresser petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Plaintiff's reply memorandum. (ECF Nos. 17, 22, 23). I find that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion and grant the Commissioner's motion. This letter explains my rationale.

       Mr. Cresser protectively filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on March 29, 2010. (Tr. 77–78, 152–60). He initially alleged a disability onset date of June 1, 2008, which was subsequently amended to June 8, 2009. (Tr. 152, 170). His claims were denied initially and on reconsideration. (Tr. 81–87, 91–94). A hearing was held on January 23, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 43–73). Following the hearing, the ALJ determined that Mr. Cresser was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 18–38). The Appeals Council denied Mr. Cresser's request for review, (Tr. 3–5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

       The ALJ found that Mr. Cresser suffered from the severe impairments of degenerative disc disease, coronary artery disease, bilateral lower extremity neuropathy, and obesity. (Tr. 24). Despite these impairments, the ALJ determined that Mr. Cresser retained the residual functional capacity ("RFC") to perform sedentary work. (Tr. 27). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Cresser could perform jobs existing in significant numbers in the national economy and that therefore he was not disabled. (Tr. 37–38).

       Mr. Cresser raises four primary arguments on appeal: (1) that the ALJ did not adequately consider several of his impairments and their combined effect on his ability to do work activities; (2) that he satisfies the requirements of Listing 1.04; (3) that the ALJ erred in determining he was

capable of a full range of sedentary work; and (4) that the ALJ should not have relied on the testimony of the VE. Each argument lacks merit and is addressed below.

First, Mr. Cresser contends that the ALJ did not adequately evaluate the impairments that he found "non-severe" at step two. Pl.'s Mem. 24–26. Specifically, he argues that the ALJ's opinion does not contain a meaningful discussion of his alleged impairments of hypertension, sleep apnea, and restless leg syndrome. Mr. Cresser claims that the record plainly indicates significant limitations resulting from these impairments. Mr. Cresser claims that the ALJ further erred by failing to consider the "combined effect" of his impairments. At step two, the ALJ determines whether a claimant is suffering from any severe impairments. An impairment is not severe "if it does not significantly limit a claimant's physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. At step two, the claimant bears the burden of production and proof. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). In support of his argument that his hypertension is a severe impairment, Mr. Cresser cites several instances of high blood pressure and adjustments to his blood pressure medication. However, the ALJ discussed those instances, most of which occurred before the amended onset date, and found that Mr. Cresser's hypertension was non-severe because, more recently, his blood pressure had largely been controlled by medication. (Tr. 26.) Moreover, Mr. Cresser has not identified any evidence indicating that his hypertension has affected his ability to do basic work activities.

With respect to his sleep apnea and restless leg syndrome, Mr. Cresser cites to the polysomnogram test from which his sleep apnea was diagnosed, and his statements concerning his sleep habits. The ALJ discussed the polysomnogram test and Mr. Cresser's testimony, but he determined that Mr. Cresser's sleep apnea and restless leg syndrome were successfully treated with CPAP therapy. *Id.* The ALJ also noted that Mr. Cresser has not sought treatment for his sleep apnea since 2009. *Id.* Mr. Cresser has not identified any evidence undermining the ALJ's assessment, nor has he identified any specific work-related limitations stemming from these impairments. Mr. Cresser also claims that the ALJ failed to consider the combined effects of obesity and his other impairments, specifically his sleep apnea. This argument is without merit. First, at step two, the ALJ determined, in Mr. Cresser's favor, that his obesity was a severe impairment. (Tr. 24–26). At step three, the ALJ considered whether Mr. Cresser's obesity "increase[d] the severity of coexisting or related impairments" such that they met or equaled a listed impairment. (Tr. 27). I find that the ALJ adequately considered the evidence in the record concerning Mr. Cresser's hypertension, sleep apnea, and restless leg syndrome, and that he provided substantial evidence in support of his conclusion that those impairments are non-severe.

Next, Mr. Cresser argues that the ALJ erred in considering Listing 1.04, Disorders of the Spine. Pl.'s Mem. 26–28. Listing 1.04 describes criteria regarding disorders of the spine, such as degenerative disc disease, which result in compromise of the nerve root. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Part A § 1.04. The sub-listings under Listing 1.04 specify the types of medical evidence that may satisfy the severity requirements of the Listing. To meet Listing 1.04A, evidence of nerve root compression must be "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle

*Collin Cresser v. Commissioner, Social Security Administration*
Civil No. SAG-14-20
December 9, 2014
Page 3

weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test." *Id.* §1.04A. In this case, however, the ALJ concluded Mr. Cresser did not satisfy the severity requirements of the Listing because "there is no objective evidence that [Mr. Cresser] has any motor loss, atrophy, muscle weakness, or sensory reflex loss." (Tr. 27). Although there is arguably objective medical evidence indicating that Mr. Cresser suffered from some sensory loss, he has largely mischaracterized much of the record. *Compare* Pl.'s Mem. 28 ("significant sensory and reflex loss"), *with* (Tr. 436) ("latencies are normal," "tibial latencies and velocities are normal, but there is loss of amplitude," "H reflexes are normal"), (Tr. 468–70) ("reflexes are brisk"); *but see* (Tr. 422) ("diminished sensation"). Moreover, Mr. Cresser has cited no evidence of motor loss, atrophy, or muscle weakness, and after thoroughly reviewing the record, I find that the ALJ's conclusion that there is no evidence of those limitations is accurate. Accordingly, even if the ALJ erred in evaluating Mr. Cresser's sensory and reflex loss, any such error was harmless. The ALJ supported his conclusion that Mr. Cresser does not meet Listing 1.04 with substantial evidence.

Mr. Cresser also claims that the ALJ erred in determining that he was capable of performing a full range of sedentary work. Mr. Cresser generally alleges that the ALJ mischaracterized the record, taking excerpts out of context. *See, e.g.*, Pl.'s Mem. 33. However, a thorough review of the record supports the ALJ's evaluation of the evidence. As noted above, Mr. Cresser regularly misconstrued the medical treatment notes. *Compare* Pl.'s Mem. 32 ("However, the ALJ fails to cite that Mr. Cresser's [sic] underwent a series of three lumbar epidural nerve root injections with only an immediate 65% sustained improvement."), *with* (Tr. 532) (describing the nerve root injections and stating that Mr. Cresser "appears to be very happy with the results. He states that he has had over 65% sustained relief and has noted improvement in his functional status as well as activity levels.").

Mr. Cresser specifically argues that the ALJ should have accorded "great weight" to the medical opinion of his treating physician, Dr. Halle, and that the ALJ erred by according "significant weight" to the opinions of the State agency physicians. Mr. Cresser takes particular issue with the fact that the ALJ did not include a limitation based on the "unrebutted evidence" of his inability to stoop,[1] which he argues would significantly impact his ability to perform sedentary work. However, since the first State agency physician opined that Mr. Cresser suffered from no limitation in his ability to stoop, and the second State agency physician opined that Mr. Cresser could occasionally stoop, Dr. Halle's opinion that Mr. Cresser could never stoop was, indeed, contradicted. (Tr. 457, 540, 560). First, with respect to the discrepancies between the postural limitations identified by the two State agency physicians, the ALJ's failure to explain why he concluded that Mr. Cresser suffered no limitation, rather than occasional

---

[1] Presumably, Mr. Cresser did not discuss the other discrepancies between the postural limitations in the RFC assessments of the State agency physicians and those in the assessment of Dr. Halle because postural limitations "would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." SSR 96-9p, 1996 WL 374185, at * 7 (July 2, 1996). Only limitations regarding ability to balance and stoop have the potential to erode the unskilled sedentary occupational base. *Id.* at *7–8.

limitation, in his ability to stoop did not impact the ALJ's ultimate conclusion. Only a complete inability to stoop would significantly erode the occupational base of unskilled sedentary work. *See* SSR 96-9p, 1996 WL 374185, at * 8 (July 2, 1996).

Mr. Cresser further contends that the ALJ improperly discounted his credibility. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." *Id.* at 595. In this case, the ALJ determined that Mr. Cresser's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the effect of those symptoms were not entirely credible. (Tr. 28). Mr. Cresser specifically claims that the ALJ improperly based his credibility determination, in part, on the fact that the record suggested that Mr. Cresser might have a drinking problem. However, Mr. Cresser again mischaracterizes the ALJ's analysis. The ALJ discounted Mr. Cresser's credibility due to inconsistencies in his statements, of which his inconsistent statements about his use of alcohol were a pertinent example. Moreover, Mr. Cresser's inconsistent statements about his alcohol use were simply one factor among many that the ALJ considered before discounting Mr. Cresser's statements about his symptoms. The ALJ also discussed, at length: (1) Mr. Cresser's daily activities; (2) the location, duration, frequency, and intensity of Mr. Cresser's symptoms; and (3) the type, dosage, effectiveness, and side effects of Mr. Cresser's medication, factors which are all relevant to the credibility determination pursuant to 20 C.F.R. §§ 404.1529(c) and 416.929(c). (Tr. 30–35). The ALJ thus provided substantial evidence in support of his conclusion that the inconsistencies in the record "suggest that the information provided by the claimant generally may not be entirely reliable." (Tr. 35).

Finally, Mr. Cresser argues that the ALJ erred in relying on the testimony of the VE because the ALJ failed to ask the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Pl.'s Mem. 39–41. However, because the ALJ relied on the Medical-Vocational Rules ("Grids") to conclude that Mr. Cresser was not disabled, rather than relying on the VE's testimony, his failure to ask whether the VE's testimony was consistent with the DOT was harmless. In determining that Mr. Cresser was not disabled, the ALJ relied on sedentary Grid Rule 201.22, under which an individual, age 45–49 with at least a high school education and transferable skills is not disabled, and on sedentary Grid Rule 201.15, under which an individual closely approaching advanced age with at least a high school education and transferable skills is not disabled. Mr. Cresser contends that the ALJ erred in determining that he acquired transferrable skills from his past relevant work. Pl.'s Mem. 40. In support of his argument, Mr. Cresser cites several passages from Social Security Ruling 82–41p, which sets forth guidance concerning the concept of transferability of skills. However, Mr. Cresser does not specify how he believes the ALJ's decision departed from SSR 82–41p. After thoroughly reviewing SSR 82–41p, I find that the ALJ adhered to its guidance, and his conclusion that Mr. Cresser acquired skills reviewing bills for incoming merchandise, assigning workers to specific duties, dealing with people, establishing procedures, and coordinating activities in a warehouse

*Collin Cresser v. Commissioner, Social Security Administration*
Civil No. SAG-14-20
December 9, 2014
Page 5

was supported by substantial evidence, including Mr. Cresser's own testimony.  Thus, I find the ALJ's determination that Mr. Cresser could perform jobs existing in significant numbers in the national economy, and that therefore he was not disabled, was supported by substantial evidence.

    For the reasons set forth herein, Mr. Cresser's Motion for Summary Judgment (ECF No. 17) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 22) is GRANTED. The clerk is directed to CLOSE this case.

    Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                    Sincerely yours,

                      /s/

                    Stephanie A. Gallagher
                    United States Magistrate Judge